Good morning everyone and welcome to the Ninth Circuit. Judge Friedland and I are happy to welcome Judge Block from the Eastern District of New York, who's come out here to help us today. Thank you. We'll call the cases in the order on the day sheet. And the first case for argument is Timothy Wood v. Maricopa County Special Health District. Good morning, Your Honors. My name is Joshua Carden. It's my honor to represent the appellant, Timothy Wood. I'd like to reserve about three minutes of my time for rebuttal. Please watch the clock. We'll do so. Thank you. May it please the Court. By removing logic from the pretext analysis, the trial court effectively stapled shut the Wizard of Oz's curtain in this case. This case presents nearly the entire catalog of ways that an employee can prove pretext in order to defeat summary judgment. And the trial court erred both as a matter of law in granting summary judgment and then again by an abuse of discretion in denying our motion to alter or amend the judgment under Rules 59 and 60. To provide just a smattering of context, my client, Mr. Wood, a nurse in the NICU, the neonatal intensive care unit, reported a fellow nurse for sleeping on the job and appearing impaired in September of 2014. He was fired in May. So didn't the hospital investigate that nurse and even recommend terminating her? For a minute they did, Your Honor. And then based on a couple of pleas from coworkers, it appears that they rescinded that decision to terminate and left her employed. Not only did they leave her employed, she was never drug screened. She received multiple disciplines after that investigation and continued to be employed up through the conclusion of discovery in this case. Despite being arrested for being, well, at least under the suspicion of impairment with a blood test finding that she had a highly neuroactive drug in her bloodstream at the time. Is that in the record? I don't... That is in the record. So where is that in the record? Under the additional statements of fact that my client provided that were not discussed much in the trial judge's summary judgment order, unfortunately. And how does that relate to your claim of First Amendment retaliation? It goes to the... Well, first of all, it goes to the nature that my client was not wrong. But second, it highlights the hostility that he received from the hospital when he made his reports. Here is a nurse who was not only suspected of being impaired but actually ends up having a problem. It goes both to the hostility element, which is one way an employee can prove pretext, and it goes to the disparate treatment aspect where here is a nurse who is accused of impairment, turns out to have actually been impaired at least once on the job, and suffers multiple disciplinary actions for a variety of policies. Was he accused of impairment? Was he similarly situated?  He was not accused of impairment, but the disparate treatment comes with the measure of policy enforcement applied to Mr. Wood versus, for example, Ms. Liddy, the impaired nurse, and the nurse who started the IV infiltrate that ultimately resulted, allegedly, in Mr. Wood's termination. You're claiming that he was wrongfully terminated. Yes, Your Honor. And if I read this record correctly, he was one of four or five people who were subject to the cutbacks, and they were all terminated at the same time? In various departments. That's correct, Your Honor. Well, how does that support your claim that he was singled out when he was just one of four people who were lawfully terminated, presumably? In two ways, Judge Block. One, in the sense that my job on summary judgment is to show that that proffered reason is unworthy of credence. Well, let me interrupt. Are you suggesting that the other three people were also wrongfully terminated? No. Or there was a ruse that he would be part of four people, and they were all going to be terminated, but they had their eye sight on him in particular, so three other people lost their job also? No, Your Honor. I'm not suggesting that. The group that was terminated was from a variety of departments. Mr. Wood was the only contract nurse in the NICU. He was the one person in that department who lost his job. And the stated reason was that they were having too many nurses, having to cancel shifts, reduce hours, and all those things. I've proven for summary judgment purposes that that explanation is unworthy of credence because Mr. Wood was never canceled. He never had his hours reduced. And so to say there was this need to reduce available hours, that is logically inconsistent when they could have at any point said, Mr. Wood, we don't need you this week. We don't need you for that many hours. So the other three who were terminated apparently were justifiably terminated because of reduction in staff, but when it came to your client, that's a different cup of tea. That's your argument. That is one aspect of my argument, Your Honor. And it's borne out, in a sense, by what we included in our Rule 59 and 60 motion, which is the day after the motion for summary judgment was granted, the hospital advertised five positions. That was a couple of years later, I understand. It was. Yes, it was. He was terminated in May 2015, and those positions were posted in November 2017. That's correct. But the idea here is the timing is at least suspicious. But that's just one of the reasons that an employee may prove pretext in these cases. Another option for an employee is to argue that there was a disparate treatment when holding Mr. Wood to a higher standard than the hospital's own infiltrate policy. And the infiltrate policy says at a certain point when an IV infiltrate, leaking fluid in the tissue, progresses to a certain point, you're supposed to notify a provider. No one disagrees that that's the hospital's policy. Ms. Harden, the decision-maker, testified that she was holding Mr. Wood to a higher standard than the policy itself. But that's not part of the roleful termination claim. I mean, what I don't understand is let's assume that there was a proper reduction in force. Okay. And he was correctly terminated. You're claiming that he was not properly terminated. But this infiltration is something that happened thereafter. So that if he was properly terminated, then how would we assess this issue about infiltration? It seems that it's not really related to that. Well, I had that same question, Your Honor, as part of this case. And the issue that came up with that is when you have an inconsistent reason for termination, that's another method of proving pretext. Were they inconsistent or are they just additional? Well, the hospital believed it was inconsistent because in the e-mail where they decided to correct it, they literally say, Leigh Ann, Ms. Harden, gave Tim incorrect information regarding the reason behind his dismissal. At the time, he's told it's a reduction in force. The next day, he goes and applies for another open position within the same hospital. Suddenly, there's a new reason given. It says, no, you're no longer eligible to work here because it's not just a reduction in force. It's also this IV infiltration. But couldn't incorrect just mean she gave one reason and really there were two reasons, and the two reasons don't need to be inconsistent for that to be true? Could it be? Possibly. But this is summary judgment. But they don't seem inconsistent is the thing. I mean, what is the logical tension between the infiltrate discipline and the reduction in force? One allows you to get a job elsewhere at the hospital. Another one does not. When you have a separate claim for that, isn't that a different type of lawsuit? If, in fact, he applies for employment and he's rejected, you can then raise the issue that that's the reason why he was rejected. Not in this particular case, Judge Block, because they came forward. Their allegation is, oh, no, that was another reason we had all along. Never mind that we never told you about it. Never mind that we're going to essentially lie and say we told you in your final phone call it was the IV infiltrate issue. No, that did not come up in the final phone call. It came up after this process started. He was terminated before that. Correct. Correct. It seems that that stands on its own footing. You would think so, except they made a point of calling him after his rejected job application to say. And the rejected job application was, no, you're ineligible to work here. Well, that didn't make sense if he was just fired as a reduction of force. So they had to have another follow-up call with him to say, oh, wait, no, you're really fired. In addition to the contract reduction in force, it's also this other reason. Well, even if they had two reasons, I didn't see anything relating them to whatever he reported about Ms. Liddy. I mean, it was reading through the record. He made this report. They followed up on it. His immediate superior, I think it was Harden, recommended terminating, and her supervisor said no because the second call was anonymous or whatever the reason was. But nobody that I saw in the record said, other than Tiemann, whose claims have been dismissed against her because she's no longer a supervisor, made any suggestion that that was a problem that he had reported. There were other issues in the record of things that he had done that they obviously thought he was a problem employee. But you need to show that this is a retaliation claim and I don't see the connection. And from my perspective, Your Honor, the connection is what I'd like to call temporal proximity plus. We already have about a four-month gap between his last claim. Temporal proximity is not enough. If we were in a Title VII case, that would make a prima facie case. But first, we're not in a Title VII case, and second, we're not making a prima facie case. You're trying to show that there is pretext or discrimination. And so temporal proximity, when there's all these intervening events, can't be enough. Temporal proximity is by itself. Is there more than that? What's the plus? The plus is the initial hostility to his complaint. That's one of the things that. . . But you dropped your claims against Ms. Tiemann. Not by Ms. Tiemann, Your Honor. Ms. Dabrowski, this is in Volume 2 of our record at 287. Ms. Dabrowski, as soon as they find out that this complaint has been filed with the State Board of Nursing, is immediately announcing that the impaired nurse is going to be going to HR with a complaint of harassment and bullying. And so she made a inference based perhaps on past behavior from the nurse or from other employees, but that doesn't show the hospital is antagonistic. It says she's predicting the behavior of the employee who had a report entered about her, which seems fairly reasonable. How does that show hospital antagonism or anger at his reporting? Because Ms. Dabrowski is also a supervisor. Ms. Dabrowski is communicating with the decision makers that she considers Mr. Woods' action of following a reporting policy to be harassment and bullying. She didn't say that. She said that the nurse will probably complain about that. She did. She talked earlier in the thread. She's talking about her communications with that nurse about this process. That nurse will find her own lawyer who will come in and say it's retaliatory. That's what she's predicting, which is true probably. She very well could, Your Honor. But, again, on summary judgment, the inference is here that there is frustration. Ms. Tiemann said, oh, you shouldn't report someone like that. You should just wake her up and ignore that. But you dropped your claims against her, so she's no longer in the supervisory chain and isn't part of the hospital. Correct, but that doesn't eliminate the fact that Ms. Tiemann, as a supervisor, was also hostile to Mr. Woods' complaint. Did you want to save some time? I do, Your Honor. Thank you very much. May it please the Court. Your Honors, my name is Eric Dowell, and I represent the appellees in this case, the Maricopa County Special Healthcare District and the individual defendants. I'll refer to them collectively as the hospital. I want to focus my time on the pretext arguments. Opposing counsel and Mr. Wood have raised a number of issues that I think are inconsistent with the actual record in this case. As Your Honor pointed out in the opening remarks, the fact that Mr. Wood reported conduct that he believed might be endangering a patient at the hospital, he did so in April of 2014. He was the second person to do that. He made the report three days after the alleged sleeping incident, which is what he reported. He was the second nurse to report that. There's no evidence in the record that anything adverse has ever happened to that first nurse to make the initial report. The hospital immediately investigated, as Your Honor pointed out. What about Ms. Tiemann saying you shouldn't be reporting these things, you should just check on the nurse, wake her up. A supervisor has to see this sort of bad behavior. Well, the issue there is Ms. Tiemann, even if she chided him as he put it in his open remarks, she's telling him, look, we have to make sure that we're correct on this. And we actually have a duty to report policy. So there's a sleeping on the job policy and there's a duty to report policy. So the fact that the hospital maintains two policies that require a nurse to make a report, not only to hospital management but to the Arizona Board of Nursing, indicates there's no hostility. Ms. Tiemann was the very one who placed the nurse, Ms. Liddy, on leave, subject to being terminated. It was only rescinded, as Your Honor pointed out, because the allegation that was made to the patient hotline could not be corroborated, as it was with a prior nurse a year or two earlier. So she rescinded her termination. Nonetheless, there were write-ups and they were told to keep an eye on this nurse. They called the nurse in and they asked her about it. They documented her file about it. They made sure to watch her. They took Mr. Wood's reports of this nurse very seriously. There's no evidence to the contrary. And later, when they find out that they get a subpoena from the Arizona Board of Nursing, and as Your Honor pointed out, there was this nurse that came in that was reported and she made a complaint to a supervisor saying she'd just received a report from the Board of Nursing and she wanted to go to HR. She is the one that characterized it as harassing, as bullying by the southerners, Mr. Wood. She wanted to go to HR. They made sure that she had the opportunity to do so. The two arguments that Mr. Wood advances to try to show pretext are that there was no need for the reduction in force. And, in fact, the other argument that he advances is that the infiltrate policy, the IV infiltrate policy was just made up. So I understand his reduction of force argument to have an additional component, which is that even if the reduction of force was needed, it didn't make sense to fire an independent contractor essentially instead of an employee because they could have just reduced his hours and he was less expensive than the other people anyway. Do you have a response to the idea that he was a less expensive employee? Well, they did reduce his hours. They reduced his hours to zero. And his hours were guaranteed at 48 hours a pay period, 24 hours a week. Guaranteed. That's admitted in the record. So he was required to work at least 24 hours. The fact that he had never, he alleges, never had prior, previously been asked to not take a shift is irrelevant. Ms. Harden, when she was tasked with looking at the departments that she managed, which are the five departments in which those five employees were riffed, there's no dispute in this record that she looked at the census data, that she looked at the overstaffing needs, at the number of hours that were given, and she determined the proper amount of hours that needed to fill those patient needs. She made those determinations. That is not even disputed. What is disputed is Mr. Wood says, well, it just shouldn't have been me. Was he the only independent contractor? He was the only pool nurse in her department. So she had five departments that she managed among a very large hospital, and they were all women's needs and patient and neonic unit and that sort of thing. He was the only pool nurse, contract nurse, in her five departments. The other four, and there were four, not three, there were four other nurses that were terminated as part of that reduction in force, and they were full-time equivalents. So if you keep Mr. Wood, you're going to have to find a way to reduce hours from somebody else who is a full-time equivalent, who is being paid benefits, who does get paid time off, who is contributing to the state retirement system. All of those things, you would have to then take the hours that you would give Mr. Wood and take those hours away from somebody else who is a full-time equivalent and getting paid all those benefits. So the argument that it's not a cost savings is just basically a legal argument. There's no factual basis to it at all. There's no facts in the record, and, in fact, everything about the RIF was admitted. It's just you shouldn't have selected me. The IV infiltrate policy is very similar to that. Mr. Wood admits that in May there was an IV infiltrate. He took over from a prior nurse, and the baby that he was caring for had an IV infiltrate. He claims he reported that in a timely way in accordance with the policy. Ms. Harden, who was asked to investigate it, determined that he didn't. The record is replete with the e-mails where she's investigated or she's interviewed the doctor, she interviewed the other nurses on staff, including Ms. Dabrowski, who was the primary nurse dealing with Mr. Wood, and determined that he didn't report it in time. That's the only issue he takes with this issue. He recognizes there was an infiltrate, and he recognizes that his behavior to his supervisor, Ms. Dabrowski, was inappropriate. He said to her, or actually to the supervisor after speaking with her, she acted like a battered spouse. She came in and she micromanaged my process. She told me to move my computer. We were trying to get the baby ready to transport to a specialty hospital. But you're arguing a lot of facts. The more facts you argue, the more you come closer to the line of maybe we should let the jury sort it all out. But what I'm curious about, she claims that nobody else was so-called discriminated against her because of the infiltration situation. Are there any other people who have also been disciplined because of that, or is she the only one? Let me address that question because, first of all, the facts that I just articulated for the court are all admitted. Those are undisputed facts, all undisputed facts. And so with regard to the other nurse, that's the testimony that Mr. Wood cites. He cites Ms. Harden's testimony, and he says, no other nurse was ever fired for an IV infiltrate violation. But that's not what the record shows. He asks her the question, was any other nurse fired for an IV infiltrate? She says, I don't know. I have no personal knowledge of that. Was there discovery about this question? I don't really understand why we don't have an answer that's better than that one deposition question. Did they ask you to produce any documents about IV infiltrate errors? Yes, yes. And Mr. Wood and his counsel were the ones that developed the record below at summary judgment and the appellate record. And here, the testimony from Ms. Harden was only, I don't know if anyone else was fired. The fact that she doesn't know if anyone else was fired doesn't mean no one else was fired. She wasn't the 30B6 representative for the hospital. She wasn't the corporate representative. She was an individual defendant asking you. But it seems that all we have in this record is that she was the only one who was disciplined or discharged, whatever, for a violation allegedly of the infiltrate policy. Well, the testimony, Your Honor, is that Mr. Wood tries to say Ms. Harden said that he was the only one. She didn't say that. No, I know that. And that's the record that he's put into evidence to call the pretext. He has the burden of coming forward and showing that he was the only one and he hasn't met that burden? That is correct. He hasn't developed the record on that at all. There's no record evidence that he was the only one terminated for an IV infiltrate. In fact, Ms. Harden said at deposition, she said, yes, people have been fired for violating policy. And then he said, well, how many others? And she said, I don't know. You're talking about the reporting, the failure to report, right? Yes. Not the actual occurrence of that. Right. And that's another issue that I think needs to be addressed. The violation was the timely failure of Mr. Wood to report the infiltrate, not causing the infiltrate. So when he raises issues and says, well, it was the other nurse before me that caused it, is completely a red herring. He wasn't terminated for causing an IV infiltrate. But he could have asked in discovery about other incidents of not reporting IV infiltrates. That would have been analogous. And you're saying that whatever happened with that, it's not in the record here. It's not in the record here. Are you also clear that the posting of the vacant positions did not happen for two years after this termination? It was two years later. It wasn't the next day or the next month. It was a long time after that. It was a very long time after that. And during that interregnum, what happened during that two-year period? The reduction in force stayed in place? Well, there's no record evidence of that developed by the plaintiff. There's nothing we have about that. Yeah, there's nothing in the record about what took place after that. Now, the issue was Ms. Harden looked in January and February of 2015 as to the needs of her departments and at that time determined what the patient volumes would be and so forth. She made a recommendation in February of 2015 that then was not approved by management until May of 2015. So the infiltrate then happened about a week or so before Mr. Wood was terminated. The decision to reduce the force was already made, the recommendation, I think in February, and it was acted upon in May for all the four people who were terminated. That's correct. The recommendation was made and then acted upon. This happened after the recommendation was made. Correct. Another thing that happened after the termination was this issue that Mr. Carden raised about the arrest of this nurse. Mr. Wood is intent on being right. He wants to say, look, I made a report that a nurse was impaired, as was his duty, under the policy and his contract, and I was right. Well, the fact that he's right is not material to this question. The question is, has he proffered evidence that undermines the hospital's reasonable good faith belief that he did violate policy? He has that burden, the burden of coming forward with evidence to show that the hospital did not reasonably believe that it needed to reduce the force or that he violated the policy. What about the opposing counsel points to the e-mail exchange where they're trying to figure out how to provide him with the reason for why he was fired? Well, there's a couple of e-mails in the record. The one e-mail that he's referring to is one from Human Resources, giving a report to the other Human Resource Department. And she noted that Ms. Harden, when she told Mr. Wood about his termination, didn't give him both reasons. She gave him one reason. There's another e-mail in the record that shows why. She actually discusses that with Ms. Stotler to determine, should we give him both reasons or not? Let's just stick with the RIF reason because that's easier and we'll otherwise be here for hours talking with him about it. That is actually her statement in her e-mail. So she gives him the reason. You were reduced in force, and that's that. He then applies, I guess the same day as what he submitted to the record. He applies for another job in another department and claims he was told by a recruiter that he was ineligible. It was at that point, then, when the hospital said, we need to give him all of the reasons. Human Resources says, we can't just give him the one reason. We need to give him the two reasons, both of them. And the infiltrate, which happened two weeks prior to the termination, was the second reason. It's well documented. It's not an after-the-fact reason. It was contemporaneously documented with the events. Would he have been re-employed if not for the infiltration issue? I can't answer. That's pure speculation. I don't know what the needs of the hospital are or anything of that nature, and he hasn't applied since, so it's not part of this appellate record. Let me address one last final point in the First Amendment context. Mr. Wood contends that his reporting of this other nurse was protected activity under the First Amendment. It wasn't. The case law is very clear that when it is part of your official duties that you have to make a report, and you do, as part of your duties, it is not protected speech. I thought that maybe the protected aspect here, though, was that he not only said that Ms. Liddy was impaired or sleeping, but that the supervisors didn't respond appropriately, and it was that supervisor part that it wasn't clear to me he really had to report to ABON, or however you say, A-B-O-N. Are you referring to the testimony about when they discovered the complaint filed by Mr. Wood to the Board of Nursing? Yes. So I think the acronym is A-B-O-N. So the report to them, as I understand it, included not only something about Liddy being sleeping or impaired, but also that the supervisors had not adequately addressed the issue. That was Ms. Liddy's statement. Ms. Liddy informed Ms. Dabrowski, and she informed another supervisor, because she was upset she got this complaint from the Board. Just to clarify, was there anything in his report to the Board of Nurses accusing the hospital of not appropriately following up on his report of impairment? Not a word. It raised issues such as this other nurse is impaired, she looks like she has some kind of substance abuse issues, she's stalking me, things of that nature. Not once does he raise an issue that even arguably alleges a violation of Arizona law for the Arizona Employment Protection Act claim. But it relates solely to his personal dispute about her and her allegedly being impaired and being unsafe as a nurse. Do we have the actual ABON complaint or only the Liddy email about it or the emails about it? I don't know if Mr. Cardin put that in part of his record or not. I don't believe he did. I believe all we have is just the email discussion about the complaint. So you're just representing to us that it doesn't include anything about the supervisors? That is correct. I don't believe Mr. Cardin, I'm sure, will correct me if I'm wrong, but it doesn't refer to anything about the supervisors. There is the one email that takes place, I believe in October, where Ms. Liddy comes in and makes a report to the supervisor about the board complaint, and she's the one that says he's trying to drag management into all of this as enablers or some words to that effect. She's very upset, obviously, by what her coworker has done, and she's reporting that to her supervisor, and she wants to speak to human resources about that. And they're just helping her to do that if she wants to do that. That's simply all they're doing. I have something from your, I think it's from your record, I have the note SER319 that says, formal RN complaint attention Arizona Board of Nursing. That isn't his complaint to the Arizona Board of Nursing? That sounds like it is the complaint, yes, Your Honor. Okay. It's a two-page letter. It's undated. Undated and also unsigned. Yes. And that's it. Okay, so we do have it. Which, by the way, was not given to the hospital or any supervisors at all. It wasn't even addressed to them or copied to them. It looks like I'm a couple of minutes over my time. Yes. Thank you, Your Honor. Thank you. Thank you. In the short time that I have left, I'd like to respond to a couple of points Mr. Dow made. Number one, in the summary judgment context where a low bar is generally required to prove pretext, all I am supposed to do is to suggest to this court that either a or that the proffered explanations are unworthy of credence. This court has repeatedly written that retaliators don't often advertise their reasons for retaliating. They've learned the system. They've learned if you wait a little while, you can disguise your retaliatory motive. And the court has said frequently the proximity is not enough by itself. But in this case where we have challenged the accuracy and the veracity of both of the reasons given, the reduction in force making no logical sense, there being no documentation of that reduction in force. Ms. Harden, I asked her, is there any documentation that you know of for the reason for reduction in force? And she says no. That's her first word out of her mouth. And then she says, we were told not to keep the records of that decision in the files. Well, the recommendation was made in February and it wasn't acted upon until May. For my sense of the records, a lot of the things you complained about happened during that interregnum, including the infiltration situation. So the recommendation was made before that and other things that she complained about. So how does that support your notion that this was pretextual? I find it intriguing, Your Honor, that from September to May is nine months. This court has said three to eight months is the inferential time where we can look at temporal proximity. If the decision is made in February, hey, we're spending too much money on nurses. Why wait 90 more days to fire Mr. Wood? Well, that's another reason why their explanation is unworthy. It wasn't just he that was fired. This involved four or five other employees that were treated exactly the same. The recommendation made in February. Much of what you complain about happened between February and May, including the infiltration situation. I don't see that as correlated to firing. Incorrect, Your Honor. And if you heard from Mr. Dowell, he said Mr. Wood was the only employee in this department that was terminated. The others came from other departments where Mr. Wood didn't work. I see that my time is up. We'd ask the court to reverse and remand. Thank you. Thank you. Thanks. Both parties for their argument. The case of Timothy Wood versus Maricopa County Special Healthcare District is submitted.
judges: Ikuta, Friedland, Block